UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| BRIAN STEFFEY; and JANE ANN STEFFEY, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 3:16-CV-223 ) |
| BEECHMONT INVESTMENTS, INC. d/b/a MASERATI OF CINCINNATI, | ) ) ) ) |
| Defendant. | ) |

**<u>MEMORANDUM OPINION</u>**

This matter is before the Court on Defendant's Motion for Summary Judgment [doc. 24], Defendant's Brief in Support of the Motion [doc. 25], Plaintiffs' Response [doc. 27], Defendant's Reply [doc. 28], Plaintiffs' Supplemental Response [doc. 33], and Defendant's Reply to the Supplemental Response [doc. 34]. For the reasons herein, the Court will grant the motion.

**I.  BACKGROUND**

Roughly three years ago, Plaintiffs Brian Steffey and Jane Ann Steffey ("the Steffeys") filed suit in Knox County Circuit Court against Defendant Maserati of Cincinnati and Gregory P. Isaacs ("Mr. Isaacs"), after Mr. Isaacs was involved in an automotive accident with Plaintiff Brian Steffey ("Mr. Steffey") in Knoxville. [State Am. Compl., doc. 26-4, at 2]. According to the Steffeys' allegations, the Knoxville Police Department investigated the accident and concluded that Mr. Isaacs made an "improper

lane change" and "sideswipe[d]" Mr.Steffey, who was "violently thrown from his motorcycle" and suffered serious, chronic injuries. [*Id.* ¶¶ 7–8, 10, 18–19]. The Steffeys maintained that Maserati of Cincinnati owned the vehicle involved in the accident and had lent it to Mr. Isaacs beforehand. [*Id.* ¶¶ 14–15]. As a result, Mr. Steffey brought two negligence claims against Mr. Isaacs, one for common-law negligence and one for negligence per se under various Tennessee statutes. [*Id.* ¶¶ 11–12]. Mr. Steffey also brought two tort claims against Maserati of Cincinnati, one for vicarious liability under Tenn. Code Ann. sections 55-10-311, 55-10-312 and one for negligent entrustment. [*Id.* ¶¶ 13–17]. Jane Ann Steffey ("Mrs. Steffey") also sued for loss of consortium. [*Id.* ¶ 20]. Together, they claimed $3,268,170.32 in compensatory damages. [*Id.* ¶ 22].

About midway through the case, Mr. Steffey moved to dismiss, without prejudice, his claims against Maserati of Cincinnati, electing to proceed to trial only with his negligence claims against Mr. Isaacs, and the Knox County Circuit Court granted his motion and ordered the dismissal of the claims against Maserati of Cincinnati without prejudice. [Order Voluntary Dismissal without Prejudice, doc. 26-3, at 1].[1] Leading up to trial, Mr. Isaacs conceded that he caused Mr. Steffey's injuries from the accident by negligently operating his vehicle, leaving damages as the only remaining issue for resolution between the parties. [State Answer, doc. 26-5, ¶¶ 10–17]. Mrs. Steffey then moved to dismiss, with prejudice, her wrongful consortium claim and was no longer a

---

[1] Tennessee Rule of Civil Procedure 41.01(3) requires "[a] voluntary nonsuit to dismiss an action without prejudice [to] be followed by an order of voluntary dismissal signed by the court." Tenn. R. Civ. P. 41.01(3).

party to the case. [Order Voluntary Dismissal with Prejudice, doc. 26-7, at 2]. At the parties' trial on damages, the jury returned a verdict for Mr. Steffey, awarding a judgment to him totaling $504,348 in compensatory damages. [Special Verdict Form, doc. 26-6, at 2; State J., doc. 26-8, at 2–3]. Mr. Isaacs then fully paid this judgment. [Satisfaction of J., doc. 26-9, at 2].

Three weeks later, the Steffeys filed this federal diversity suit against Maserati of Cincinnati, bringing the very same claims that they initiated against it in Knox County Circuit Court. Mr. Steffey alleges a claim for vicarious liability under Tenn. Code Ann. sections 55-10-311, 55-10-312, contending that "any and all negligence of Mr. Isaacs can be imputed to Defendant Maserati." [Fed. Compl., doc. 1, ¶¶ 11, 14]. Mr. Steffey also brings a claim for negligent entrustment, asserting that Maserati of Cincinnati "fail[ed] to discover and/or investigate the prior driving actions of Mr. Isaacs before entrusting [its] vehicle to his care." [*Id.* ¶ 13]. Mrs. Steffey renews her wrongful consortium claim as well. [*Id.* ¶ 21]. In addition, the types and amounts of compensatory damages that they pursue in this action are identical to those in the state action:

**ECONOMIC DAMAGES**

|  | STATE AM. COMPL. [¶ 22] | FED. COMPL. [¶ 23] |
|---|---|---|
| Lost Income/Diminished Capacity to Earn | $ 2,053,633 | $ 2,053,633 |
| Past Medical Bills | $ 36,576.68 | $ 36,576.68 |
| Future Medical Bills | $ 249,760.64 | $ 249,760.64 |

3

## NON-ECONOMIC DAMAGES

|  | STATE AM. COMPL. [¶ 22] | FED. COMPL. [¶ 23] |
|---|---|---|
| Physical Pain and Suffering | $ 132,600 | $ 132,600 |
| Emotional Distress | $ 132,600 | $ 132,600 |
| Disfigurement | $ 132,600 | $ 132,600 |
| Loss of Enjoyment of Life | $ 132,600 | $ 132,600 |
| Permanent Injury | $ 132,600 | $ 132,600 |
| Loss of Consortium | $ 265,200 | $ 265,200 |

## TOTAL DAMAGES

|  | STATE AM. COMPL. [¶ 22] | FED. COMPL. [¶ 23] |
|---|---|---|
| Economic and Non-Economic Damages | $ 3,268,170.32 | $ 3,268,170.32 |

Maserati of Cincinnati now strenuously objects to the Steffeys' filing of this action, maintaining that the Steffeys are attempting to snooker the Court into allowing them to recover two judgments for one injury. [Def.'s Br. at 7–9]. Maserati of Cincinnati argues that it is entitled to summary judgment because Mr. Steffey is vying for a double recovery, which is impermissible under Tennessee law. [*Id.* at 8–9]. The Court will now rule on Maserati of Cincinnati's motion.

## II. LEGAL STANDARD

Summary judgment is appropriate when the moving party shows, or "point[s] out to the district court," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), that the record—the admissions, affidavits, answers to interrogatories, declarations, depositions, or other materials—is without a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law, Fed. R. Civ. P. 56(a), (c). The moving party has the initial burden of identifying the basis for summary judgment and the portions of the record that lack genuine issues of material fact. *Celotex*, 477 U.S. at 323. The moving party discharges that burden by showing "an absence of evidence to support the nonmoving party's" claim or defense, *id.* at 325, at which point the nonmoving party, to withstand summary judgment, must identify facts in the record that create a genuine issue of material fact, *id.* at 324.

Not just any factual dispute will defeat a motion for summary judgment—the requirement is "that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it may affect the outcome of the case under the applicable substantive law, *id.*, and an issue is "genuine" if the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In short, the inquiry is whether the record contains evidence that "presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. When ruling on a motion for summary judgment, a court must view the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). "[T]he

judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. A court may also resolve pure questions of law on a motion for summary judgment. *See Hill v. Homeward Residential, Inc.*, 799 F.3d 544, 550 (2015).

### III. ANALYSIS

As an initial matter, the Court notes that it will accord full faith and credit to the proceedings and judgment that predated this action in Knox County Circuit Court. *See* 28 U.S.C. § 1738 (providing that "records and judicial proceedings" of a state court "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken"); *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 373 (1996) (stating that all federal courts are legally bound to "treat a state court judgment with the same respect that it would receive in the courts of the rendering state"). In this vein, Maserati of Cincinnati does not propose that the Knox County Circuit Court's dismissal of Mr. Steffey's claims without prejudice now forecloses their revival here.[2] Instead, it argues that Tennessee's rule against double recovery bars Mr. Steffey's claims.

"It is well settled under Tennessee law that a party cannot be compensated for the same injury twice." *Hickson Corp. v. Norfolk S. Ry. Co.*, 260 F.3d 559, 567 (6th Cir.

---

[2] Indeed, in Tennessee, this type of order—dismissal without prejudice—does not bar a plaintiff from reinstituting his previously dismissed claims in a new action so long as he initiates the new action within a year of dismissal. Tenn. Code Ann. § 28-1-105(a); *Rajvongs v. Wright*, 432 S.W.3d 808, 811 (Tenn. 2013); *see generally Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466 (1982) ("[F]ederal courts . . . give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged.").

2001) (citing *Shahrdar v. Glob. Hous., Inc.*, 983 S.W.2d 230, 238 (Tenn. Ct. App. 1998)). Under this longstanding rule, the Court's task is to decide whether Mr. Steffey—having already recovered compensatory damages from Mr. Isaacs for his negligent role in the accident—can now recover compensatory damages from Maserati of Cincinnati for its alleged negligent role in the accident. The Court's determination of this issue will also resolve whether Mrs. Steffey can sustain her loss of consortium claim, which is, as a matter of law, conditional on the survival of her husband's negligence claims. *See Tuggle v. Allright Parking Sys., Inc.*, 922 S.W.2d 105, 109 (Tenn. 1996) (adopting the majority view that a loss of consortium claim is a derivative claim and therefore "dependent upon the negligent injury of the other spouse who has the primary tort cause of action" (quotation omitted)).

Under Tennessee law, a plaintiff has license to bring multiple claims or alternative theories of liability in a single action to redress an injury. *See Concrete Spaces, Inc. v. Sender*, 2 S.W.3d 901, 906 (Tenn. 1999); Tenn. R. Civ. P. 8.01; *see also* Tenn. R. Civ. P. 8.05(2).[3] But Tennessee's rule against double recovery may limit a plaintiff's ability to recover damages under multiple theories of liability, even when a plaintiff is successful under all of those theories. A plaintiff may recover more than one type of damages under multiple theories of liability only if those damages, in providing a remedy for the same

---

[3] In a diversity action, the Court applies federal procedural rules, not state procedural rules. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996). A plaintiff's right to plead multiple claims or alternative legal theories under the Tennessee Rules of Civil Procedure, however, is one that exists under the Federal Rules of Civil Procedure too. *See* Fed. R. Civ. P. 8(a)(3) (stating that "[a] pleading . . . . may include relief in the alternative or different types of relief"); *see also* Fed. R. Civ. P. 8(d)(3) (providing that "[a] party may state as many separate claims . . . as it has, regardless of consistency").

injury, do not overlap each other. *See Shahrdar*, 983 S.W.2d at 238 ("Whether the theory of recovery is breach of contract, intentional misrepresentation, or promissory fraud, if the damages claimed under each theory overlap, the Plaintiff is only entitled to one recovery.") (citation omitted)); *see also Hickson*, 260 F.3d at 567. In other words, damages that "serve the same functions," or have the same remedial schemes, are not recoverable twice for the same injury. *Concrete Spaces*, 2 S.W.3d at 906 (footnote omitted); *see Hickson*, 260 F.3d at 567 (determining that the plaintiff could not recover compensatory damages more than once for a single injury, even though this type of damages was available to it under both tort law and contract law).

At first blush, Mr. Steffey does appear to violate Tennessee's rule against double recovery by seeking the same type and amount of compensatory damages—to the cent—to redress the same injuries he pursued to judgment against Mr. Isaacs. *See Shahrdar*, 983 S.W.2d at 238 (stating that the plaintiff was entitled to only one recovery when he failed to plead "damages different in kind or amount sufficient to justify an award of damages beyond what he was awarded" at trial). Although Mr. Steffey acknowledges Tennessee's rule against double recovery, he maintains that this action against Maserati of Cincinnati is permissible because it is a successive suit for a single recovery. [Pls.' Resp. at 4]; *see Allied Sound, Inc. v. Neely*, 909 S.W.2d 815, 821 (Tenn. Ct. App. 1995) ("It is only a double recovery of damages—*not successive judgments seeking a single recovery*—that is barred." (citation omitted)). But the keystone of a successive suit's viability is a plaintiff's pursuit of a *single* recovery, which means that a plaintiff must not have (1) previously recovered a prior judgment, (2) for the same damages, (3) as compensation for

the same injuries. *See Allied Sound*, 909 S.W.2d at 821. Again, according to the uncontroverted evidence in the record, Mr. Steffey already recovered a judgment for the identical injuries and damages that he alleges here in his Complaint, which, in nearly all respects, is a facsimile of the complaint he filed in Knox County Circuit Court.

But Mr. Steffey goes on to argue that the Court should allow this action to proceed because Maserati of Cincinnati, by filing a "false affidavit," deceived him into releasing his claims in state court. [Pls.' Resp. at 4]. He says that, if not for its duplicity, it "would have been forced to defend" itself alongside Mr. Isaacs in state court for the very claims that he now brings here. [*Id.*]. Mr. Steffey therefore maintains that the "only way we *can* know the true amount of the award is to try th[is] case . . . and then compare that award to the one returned by the jury in State Court." [*Id.*]. This argument, at least on its surface, is not without some merit. Again, a plaintiff is entitled to raise multiple theories of liability in a single action, *Concrete Spaces*, 2 S.W.3d at 906, and if a plaintiff is successful on more than one of these theories at trial, he may select the one theory among them that provides him with the maximum recovery, *see id.* at 909 ("If a defendant has been found liable under more than one theory of recovery, no inequity results from allowing the plaintiff to choose one of the claims upon which to realize its maximum recovery[.]" (citation omitted)); *see also Hickson*, 260 F.3d at 567 (recognizing that, under Tennessee law, a plaintiff is "entitled to the greatest amount recoverable under any single theory pled"). The issue facing the Court, then, is whether Mr. Steffey's claims for vicarious liability and negligent entrustment can, as a matter of law, result in a larger recovery than the one he received for his negligence claims against Mr. Isaacs. If so, Mr. Steffey may

9

have a viable argument for collecting the difference between any damages he might receive from a jury in this action and those he received in Knox County Circuit Court.

### A. Vicarious Liability

Mr. Steffey claims that Maserati of Cincinnati is vicariously liable for his injuries under the doctrine of respondeat superior, [Fed. Compl. ¶¶ 11, 14], which binds a principal to his agent's negligent acts when he exercises sufficient control over the agent's conduct, or in other words, when the agent is "acting in the business of" the principal, *Johnson v. LeBonheur Children's Med. Ctr.*, 74 S.W.3d 338, 343 (Tenn. 2002) (quotation omitted). *See Browder v. Morris*, 975 S.W.2d 308, 311 (Tenn. 1998) ("One who is vicariously liable is held to be financially responsible for the tortious actions of another, even though the vicariously liable party was not negligent." (citation omitted)); *Pryor Brown Transfer Co. v. Gibson*, 290 S.W. 33, 36 (Tenn. 1926) ("[R]espondeat superior is founded on the principle that he who expects to derive advantage from an act which is done by another for him must answer for any injury which another may sustain from it." (quotation omitted)). Under respondeat superior, when a driver causes an injury to another by negligently operating a vehicle, proof of the vehicle's ownership is evidence that the owner exercised control over the driver. Tenn. Code Ann. §§ 55-10-311(a), 55-10-312(a).

When an injured plaintiff, however, brings a negligence claim against a driver and recovers a judgment against him, that plaintiff cannot, later on, rely on respondeat superior to sue the vehicle's owner for the same harm. *See Phillips v. Rooker*, 184 S.W.

12, 14 (Tenn. 1916) (stating that when a plaintiff "takes a judgment against the agent, that is a decisive act of election and his case against the principal for later judgment in the same or in a subsequent suit must fail" (citations omitted)); *cf. Lavoie v. Franklin Cty. Publ'g Co.*, No. M2010-02335-COA-R9-CV, 2011 WL 1884562, at *5 (Tenn. Ct. App. May 17, 2011) ("[O]nce the agent is released from liability by virtue of settlement with the plaintiff, the principal is automatically released." (citing *Olympia Child Dev. Ctr., Inc. v. City of Maryville*, 59 S.W.3d 128, 134–35 (Tenn. Ct. App. 2001))). Because Mr. Steffey has recovered a jury's full award of damages for Mr. Isaacs' negligence, he now has no right to force another party—Maserati of Cincinnati—to answer vicariously for that same negligence. His effort to do so is a clear swipe at a double recovery and a misapplication of the doctrine of respondeat superior.

Respondeat superior requires an agent and a principal to be jointly and severally responsible for the agent's negligence, *see Gen. Elec. Co. v. Process Control Co.*, 969 S.W.2d 914, 916 (Tenn. 1998)—meaning that a plaintiff may recover the full amount of his damages from either party (*i.e.*, a several recovery), or a portion of damages from one party and a portion from the other (*i.e.*, joint recoveries) until the complete judgment is met in full, *see Resolution Tr. Corp. v. Block*, 924 S.W.2d 354, 356 n.4 (Tenn. 1996). But here, Mr. Steffey has already *severally* recovered his judgment—or that is, has already recovered it *entirely*—from Mr. Isaacs. [Satisfaction of J. at 2]. Now, he is turning to respondent superior to recover severally again for the same tortious acts—Mr. Isaacs'

negligence—but this time from Maserati of Cincinnati.[4] The doctrine does not operate in this way; it does not impart two severally paid windfalls in liability to a plaintiff, from two parties for the same injury. *See* Tenn. Pattern Jury Instructions § 3.55 (2016) (stating that an agent and principal "should be considered as one in assigning fault"); *see also Rio Mar Assocs., LP, SE v. UHS of P.R., Inc.*, 522 F.3d 159, 165 (1st Cir. 2008) ("[W]hen one tortfeasor is vicariously liable for the actions of another, the same damages are by definition attributed to each of the two tortfeasors and the prevention of a double recovery is a paramount concern." (citation omitted)); Kenneth S. Abraham, *The Forms and Functions of Tort Law* 113 (6th ed. 2007) ("The plaintiff is . . . entitled to recover the full amount of his damages from either defendant. However, the plaintiff cannot ever recover more than the amount of his damages; if he has recovered the entire amount from one defendant, he can recover nothing in addition from the other defendant.").

Mr. Steffey recovered his full damages for Mr. Isaacs' negligence, in the amount that a jury of his peers in Knox County Circuit Court considered proper. This award has the Court's full faith and credit. 28 U.S.C. § 1738; *Matsushita*, 516 U.S. at 373. Under the doctrine of respondeat superior, Mr. Steffey can receive nothing further. If he believes that Maserati of Cincinnati resorted to underhanded tactics to procure its dismissal from his state suit, the appropriate course of action may be the initiation of a claim for fraud upon the Knox County Circuit Court, but it is not a pursuit of a double recovery here.

---

[4] As the Court has already pointed out, Mr. Steffey is seeking the same amount of damages here in this case as he did against Mr. Isaacs in Knox County Circuit Court. [*Compare* State Am. Compl. ¶ 22 *with* Fed. Compl. ¶ 23].

## B. Negligent Entrustment

An analysis of whether Mr. Steffey is entitled to additional damages under his negligent entrustment claim is vastly different from the same analysis under his vicarious liability claim. Indeed, "negligent entrustment and vicarious liability are separate and distinct concepts." *West v. E. Tenn. Pioneer Oil Co.*, 172 S.W.3d 545, 555 (Tenn. 2005) (citation omitted). The tort of negligent entrustment, as it applies to a vehicle's owner, takes place when the owner entrusts his vehicle to a driver while knowing that the driver is not competent to operate it. *Harper v. Churn*, 83 S.W.3d 142, 146 (Tenn. Ct. App. 2001). But unlike respondeat superior, negligent entrustment does not require the vehicle's owner to stand in the driver's shoes and answer for injuries that the driver himself caused by negligently operating the vehicle. Simply, "negligent entrustment does not create vicarious liability." *Ali v. Fisher*, 145 S.W.3d 557, 564 (Tenn. 2004). Instead, negligent entrustment is based on the owner's *own* negligence, or his "*direct* negligence in entrusting the [vehicle] to an incompetent user." *West*, 172 S.W.3d at 555 (emphasis added). The owner does not become liable because of his relationship with the driver but because his action—his entrustment of his vehicle to an incompetent driver—falls below the requisite standard of care. *Ali v. Fisher*, No. E2003-00255-COA-R3-CV, 2003 WL 22046673, at *6 (Tenn. Ct. App. Aug. 29, 2003), *aff'd*, 145 S.W.3d 557 (Tenn. 2004).

Similarly, "[t]he act of negligent entrustment and the act of negligent operation of a vehicle are separate and distinct," or that is, each of these acts is a separate act of negligence. *Ali*, 145 S.W.3d at 564. Even so, these separate acts of negligence do not result in separate injuries but the same injury to the plaintiff—the injury directly caused

by the driver's negligent operation of the vehicle. Both the owner's and the driver's independent negligent acts—the acts of negligent entrustment and negligent operation, respectively—are a proximate cause,[5] or substantial factor, in producing the plaintiff's injury. *See West*, 172 S.W.3d at 556 (stating that the plaintiffs had to carry "the same burden at trial whether pursuing their theory of negligence or negligent entrustment" because "[b]oth claims . . . present the same factual issues to be resolved at trial regarding breach of duty, loss or injury, cause in fact, and proximate cause"); *Woodson v. Porter Brown Limestone Co.*, 916 S.W.2d 896, 907 (Tenn. 1996) (recognizing that "one who entrusts another with an automobile knowing of the other's incompetence may be held liable for injuries proximately caused by the [driver's] negligent use of the automobile" (citation omitted)); *Jones v. Windham*, No. W2015-00973-COA-R10-CV, 2016 WL 943722, at *8 (Tenn. Ct. App. Mar. 11, 2016) (noting that "[i]f the jury found the driver not negligent, the case would be over, inasmuch as the entrustee's negligence as the proximate cause of plaintiff's injury is an essential part of the theory of negligent entrustment" (quotation omitted)).[6]

---

[5] In Tennessee, "[t]here is no requirement that a cause, to be regarded as the proximate cause of an injury, be the sole cause, the last act, or the one nearest to the injury, provided it is a substantial factor in producing the end result." *McClenahan v. Cooley*, 806 S.W.2d 767, 775 (Tenn. 1991) (citations omitted).

[6] To be clear, the detail that makes these torts separate from each other is the *timing* of the negligent act that underlies each of them. *See West*, 172 S.W.3d at 555 (stating that "[a] negligent entrustment is committed at the moment when control of a [vehicle] is relinquished by an entrustor to an incompetent user" (citation omitted)); *Ali*, 145 S.W.3d at 564 (noting that "the entrustor's conduct must 'be viewed as of the time of the entrustment, not as of the time the entrustee improperly uses the entrusted [vehicle]" (quotation omitted)). But of course, a negligent act alone, whether an act of negligent entrustment or an act of negligent operation, is not actionable if it does not result in injury to a plaintiff.

14

Because both the owner's and the driver's negligence cause or contribute to the plaintiff's injury, the owner and the driver are joint tortfeasors. *See generally Smith v. Methodist Hosps. of Memphis*, 995 S.W.2d 584, 589 (Tenn. Ct. App. 1999) ("If there was negligence on the part of both of these parties, they could be denominated joint tortfeasors because of their alleged joint concurrent negligence."). Under Tennessee's modified comparative fault system, the apportionment of damages between joint tortfeasors—or that is, the amount of damages that each tortfeasor must pay to the plaintiff—is based on their respective percentages of fault in causing the plaintiff's injury, as determined by a jury. *McIntyre v. Balentine*, 833 S.W.2d 52, 58 (Tenn. 1992); *Vice v. Elmcroft of Hendersonville*, No. M2010-01148-COA-R3-CV, 2011 WL 3672048, at *14 n.5 (Tenn. Ct. App. Aug. 22, 2011). The Tennessee Supreme Court has held that the modified comparative fault system applies to negligent entrustment claims, which require a jury to allocate a percentage of fault between the independent negligent acts of the owner and the driver. *Ali*, 145 S.W.3d at 564.

Under this system, the initial consideration is whether the plaintiff's own negligence contributed to his own injury; if so, the plaintiff can recover damages only if his negligence is a less than fifty-percent cause of his injury when a jury compares it to the tortfeasor's negligence. *McIntyre*, 833 S.W.2d at 57. Although the plaintiff is entitled to recover damages when his negligence is below this fifty-percent threshold, a court will nevertheless reduce his damages by any percentage of his own negligence, as determined by a jury. *See id.* at 57 ("We therefore hold that so long as a plaintiff's negligence remains less than the defendant's negligence the plaintiff may recover; in such a case,

plaintiff's damages are to be reduced in proportion to the percentage of the total negligence attributable to the plaintiff."). So if a jury awards $1,000,000 in damages to a plaintiff but finds that the plaintiff is forty percent negligent and the tortfeasor is sixty percent negligent, the plaintiff can recover only $600,000. In cases involving multiple tortfeasors, the plaintiff "will be entitled to recover so long as plaintiff's fault is less than the *combined* fault of all tortfeasors." *Id.* at 58 (emphasis added). If the plaintiff satisfies this criterion, the jury assesses the comparative fault of the tortfeasors themselves. Under this analysis, each tortfeasor is "liable only to the extent of the percentage of fault assigned by the jury." *Ali*, 145 S.W.3d at 561 (citing *McIntyre*, S.W.2d at 58).

At Mr. Steffey's trial against Mr. Isaacs, the jury had no occasion to measure modified comparative fault because Mr. Isaacs conceded negligence; the jury therefore based its award of damages on Mr. Isaacs' hundred-percent fault and Mr. Steffey's zero-percent fault. [*See* State Answer ¶¶ 10–17; Special Verdict Form at 2]. Once the jury returned an award of $504,348, the Knox County Circuit Court did not reduce that number, consistent with the jury's valuation of damages based on Mr. Steffey's zero-percent fault. [*See* State J. at 2–3]. Now, after recovering in full for Mr. Isaacs' negligent role in the accident, Mr. Steffey would have a new jury compare Mr. Isaacs' negligence to Maserati of Cincinnati's alleged negligence, fashion new damages, and then apportion liability between the two. Again, he argues that the "only way we *can* know the true amount of the award is to try th[is] case . . . and then compare that award to the one returned by the jury in State Court." [Pls.' Resp. at 4].

16

But in Tennessee, once a jury assesses a plaintiff's compensatory damages, "[that] plaintiff's compensatory damages are fixed, and they neither increase nor decrease by maintaining [an] additional negligence claim against" a second tortfeasor—an approach that Tennessee courts rely on to "alleviate any concern that the plaintiff's [additional] negligence claim [will] somehow foster[] a duplicative recovery." *Jones*, 2016 WL 943722 at *8; *see Lindgren v. City of Johnson City*, 88 S.W.3d 581, 585 (Tenn. Ct. App. 2002) (concluding that the trial court erred by failing to require the jury to determine the total damages before allotting fault to each tortfeasor). This approach governs all cases that involve application of the modified comparative fault system. *See Lindgren*, 88 S.W.3d at 585 ("The trier of fact in a comparative fault case . . . should first determine the total amount of plaintiff's damages without regard to fault, and then apportion damages on the percentage of fault attributable to each tortfeasor." (citation omitted)); *Grandstaff v. Hawks*, 36 S.W.3d 482, 494 (Tenn. Ct. App. 2000) ("First, as in any comparative fault case, the jury should determine the actual dollar amount of the damages incurred . . . without taking fault into consideration." (footnote omitted)).

Again, the jury in Knox County Circuit Court already determined Mr. Steffey's total damages for his injuries from the accident, and again, that jury's determination has this Court's full faith and credit. 28 U.S.C. § 1738; *Matsushita*, 516 U.S. at 373. As a result, those damages are fixed, *Jones*, 2016 WL 943722 at *8; *see Lindgren*, 88 S.W.3d at 585; *Grandstaff*, 36 S.W.3d at 494–95, even for the purpose of this action, 28 U.S.C. § 1738; *Matsushita*, 516 U.S. at 373. Because Mr. Steffey's damages are settled—not to mention paid in full, as well—the only conceivable task that a newly assembled jury

might perform in this case is a percentage-based allocation of *those* damages between both tortfeasors, Mr. Isaacs and Maserati of Cincinnati. *See Grandstaff*, 36 S.W.3d at 494–95 (stating that after a jury assesses the total damages, it then apportions liability for those damages between the tortfeasors). But a mere apportionment of damages at this point—*after* Mr. Steffey has recovered his total damages in full—would be a dubious endeavor. *Cf. Samuelson v. McMurtry*, 962 S.W.2d 473, 476 (Tenn. 1998) (holding that the plaintiff's "accept[ance] [of] payment in satisfaction of the judgment against [one]" tortfeasor "preclud[ed]" a new trial for the apportionment of fault among the other tortfeasors); *Jones*, 2016 WL 943722 at *7 (stating that "[it] would be a waste of judicial resources" if a court were to allocate fault in a successive action after a plaintiff severally recovered from one of the tortfeasors "in the underlying lawsuit").

The upshot of all this is that Mr. Steffey's decision to sever his own claims between state court and this Court prevented the normal operation of Tennessee's modified comparative fault system, and he cannot now go on to apportion liability between Mr. Isaacs and Maserati of Cincinnati under a theory of negligent entrustment here in a postmortem action. *See Samuelson*, 962 S.W.2d at 476 ("Allowing a plaintiff to sue defendants in separate, consecutive actions would defeat the efficiency and fairness that are objectives of the principles of comparative fault." (citation omitted)). The jury in the Knox County Circuit Court heard Mr. Steffey's cause for compensatory damages relating to his accident. The jury fixed his total recovery for his injuries at $504,348. He then collected it all. Now he requests more of the same damages. He cannot recover more.

## IV. Conclusion

By filing this action against Maserati of Cincinnati under theories of vicarious liability and negligent entrustment, Mr. Steffey cannot reap a larger recovery than the one he received in Knox County Circuit Court for negligence against Mr. Isaacs. Seeking to recoup in this Court the identical damages—both in type and in amount—that he pursued to judgment in Knox County Circuit Court, he violates Tennessee's rule against double recovery. His claims for vicarious liability and negligent entrustment under Tennessee law are not actionable, and Mrs. Steffey's wrongful consortium claim, as a derivative of those claims, must also fail. Defendant's Motion for Summary Judgment [doc. 24] is therefore **GRANTED**. The Court will enter an order consistent with this opinion.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge